GAS & ELECTRIC SECURITIES CO. v. MANHATTAN & QUEENS TRACTION CORPORATION.

In re BEGG et al.

(District Court, E. D. New York.    September 9, 1918.)

RECEIVERS ⬦82—OPERATION OF STREET RAILROAD—FARES.

A court cannot authorize its receivers for a street railroad company to charge a higher rate of fare than that fixed as a maximum by the company's franchise.

In Equity. Suit by the Gas & Electric Securities Company against the Manhattan & Queens Traction Corporation. On petition of William R. Begg and Arthur C. Hume, receivers of defendant, for permission to charge an increase in fare and increase wages of employés. Denied.

Frueauff, Robinson & Sloan, of New York City (Robert S. Sloan, of New York City, of counsel), for receivers.

William P. Burr, Corp. Counsel, of New York City (John P. O'Brien and Vincent Victory, both of New York City, of counsel), for city of New York.

CHATFIELD, District Judge. Receivers appointed by this court ask for authority to charge 7 cents fare for carrying a passenger on the street railroad now being operated by them. The city of New York opposes the application on various grounds.

One objection urged is that section 181 of the Railroad Law of New York (Consol. Laws, c. 49) limits a fare within an incorporated city to 5 cents. The receivers claim that the charter of the Greater City has repealed this statute by later contradictory or limiting provisions. But, even if this be so, the franchise provides for the same rate of fare. The sole basis for operation of the road is the franchise, and without that franchise the receivers could do nothing but liquidate the property, and must cease operation. In the meantime they have the right, by order of the court, to continue to carry passengers, and they undoubtedly have a reasonable time to decide whether they will undertake the carrying on of the franchise contract.

But if they can disavow the obligation, or temporarily postpone operation under it, the court would then have property in its hands which can be operated only within the law. Possession of the property gives the court the right to enjoin any attempt to interfere with that possession, or to restrain any illegal exercise of authority. But this court cannot prevent the city from enforcing in a proper tribunal the rights which the receivers are standing upon as the basis for having anything to receive. The receivers cannot treat the right to operate a road as property in their possession, and then ignore or disregard the essential limitations showing of what the property consists. In other words, the receivers have a property right to hold and operate a 5-cent fare collecting business, with its physical accessories and implements. But the plant cannot be put to another use

without the making of a new contract. This court has not the power to force such a new contract on the city, nor to regulate fares upward beyond the limits fixed by the contract creating the right to act at all. The court has not the power to fix the rate at which the city must allow the road to be operated. Simpson et al. v. Shepard, 230 U. S. 352, 433, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18. Nor can the court proceed to exercise the franchise while holding it unconstitutional.

There is no vested right to operate a road for public convenience, unless that right be the one which the contract establishes. The court may prevent a breach of contract by the city in reducing rates; it may hold a statute unconstitutional, as confiscatory, if a proceeding is brought under section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162), as amended by Act March 4, 1913, c. 160, 37 Stat. 1013 (Comp. St. 1916, § 1243); but it cannot abrogate a contract by holding unconstitutional the law under which the contract was made, and thereupon enlarging the terms of the contract, in order to avoid the consequences of ceasing to act under the contract. Nor should the court order its receivers to treat the public unequally by allowing them to collect an excess fare from those passengers who do not refuse to pay.

The remedy must be sought by application to the city or to the Public Service Commission for a modification of the franchise, if the receivers deem it to the interest of the creditors to continue the franchise rather than to liquidate. The rights and convenience of the public must be looked out for by the receivers and the city, from the standpoint of the consequences if the receivers stop operating. But the end will not justify the means, so as to give the court jurisdiction to prevent the proper authority from deciding what franchise the public should grant for its own welfare.

The application must be denied, but without thereby preventing or hindering the receivers from seeking any source of relief from the terms of the franchise itself.